## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Robert W. Coble,
Chief of Police

v.

Amal Salem et al.

June 22, 1978

By JUDGE JOHN A. JAMISON

Robert W. Coble, Chief of Police of the city of Fredericksburg, brought this action against Amal Salem, widow of Farid Luga Salem, deceased, Claude Hughes, Sheriff-Administrator of the Estate of Farid Luga Salem, deceased, T. Eldred Lee, Jr., et ux., and five sons, owners of the property where the money described in the Bill of Complaint was found, and Mr. and Mrs. Admiral Byrd Williams, t/a Shelton's Shoe Repair Shop, occupiers of the building at the time of the discovery of the money in question, and James T. Edmonds, the plumber who actually found the money in the toilet.

Amal Salem, widow, claims title to the money for herself and the children of the decedent and herself, which amounts to $3,780.00, and which was found below the toilet bowl but within the toilet mechanism, at the floor level in the sewer pipe which passes through the floor. She takes the position that her late husband was mentally incapable of forming the intent of abandoning the money, because of his irrational behavior, prior to his suicide, the necessity for confining him in ,a mental hospital ward and his propensity, somewhat close in point of time to his death, of hiding money in unusual places. He was known to sew it within the lining of his coat sleeves, and the lining of his pants; to hide it in his car trunk and in a hollow table leg.

Bolstering this peculiar propensity is the undisputed testimony of Mrs. Salem that not long before her husband's death she found $1,300.00 in cash which he had hidden at a location he told her he had placed it.

Mr. James T. Edmonds, the plumber, claims title to the money by virtue of his having found it after having been employed by the owner of the building to unstop and clear the toilet so that it would flush. Mr. Edmonds certainly demonstrated his honesty in taking the money to the Police Department for safekeeping to await the court's decision.

The Lee family takes the position that as owners of the property and the current grantees under a deed to it from Amal Salem, widow, and as grantees under a Bill of Sale from her of all the equipment in the building, that they are the rightful owners of this money. Mr. Paul Scott, counsel for Mr. Edmonds, the plumber, and Mr. Scott Pugh, counsel for the Lee family, have each excelled in the preparation and delivery of their argument in support of their respective positions.

Strangely, there is very little law in Virginia on the subject of true ownership of found or abandoned property, but the logic of all counsel was most persuasive.

I find nothing, however, in the evidence, the authority cited, or in argument of counsel to persuade me that Amal Salem, widow, and the last tenant, and her three children as distributees of Farid Salem do not have the preferred position in this controversy. If the money had been found on the premises immediately following the death of Farid Salem, there would have hardly been any dispute regarding its ownership. Certainly, it would have passed with his personal estate to his widow and children as his lawful distributees. Much was made by the finder and property owner of the fact that this couple had been estranged for about two months and that she had obtained a warrant for assault and battery against him, though it was admitted that there was a reconciliation for a few days prior to his suicide. This strikes me as immaterial when there was no divorce, except for the finder's theory that such estrangement tended to show an abandonment of the money or at least a desire on the part of the decedent to make certain that his widow did not find or receive any part of this money and that his hiding it signified some intent on his part to see that his wife received none of the money. Yet, what about

his children? Even if we assume that he was rational at the time of his death, his attempting to hide the money, in the absence of some testimentary intent, clearly manifest on his part, such as a will or gift to other parties, would not have affected their legal right to inherit.

What, if anything, then makes this case any different from the normal legal distribution of cash assets of a decedent to his lawful distributees? It appears that the only condition seized upon by the discoverer and the property owner, other than the estrangement of the parties, is that the decedent attempted to hide, or dispose of, or abandon the money. At no time was it claimed by the finder or property owner that the money was not, at least at one time, owned by the decedent, Farid Salem. This and the fact of his ownership of the cash immediately prior to his death can hardly be disputed.

It is interesting that following the death of Salem in November 1976, the money stayed in the toilet until discovery by Edmonds in May of 1977, a space of more than six months. It was argued by the discoverer that failure to include the money in the Bill of Sale for the equipment in the shoe shop would appear to indicate that there was no intention that title to the money passed with the Bill of Sale. The obvious reason for this, of course, is that Mrs. Salem had no idea that the money was hidden in the commode. For that matter, neither did the Lee family. If, in fact, it had been intended to include the money in the Bill of Sale, but it was omitted, then certainly either party would be entitled to defend on the ground of mutual mistake if one had attempted to sue the other for recovery of the same. Of course, no such action could be brought under the facts of this case.

The most telling factors which lead to my decision is the undisputed testimony pointing out the idiosyncrasies of Farid Salem in hiding money in strange places. His ownership of the money would seem to be shown by the fact that part of the money was wrapped in soft shoe leather which he used in his trade as a shoemaker. His reason for hiding money according to his widow was that he did not trust her or the government.

Although there was no professional testimony touching upon Salem's mental state, his wife and her sister, Mrs. Musleh, both testified that he was "frightened" and had

been acting strangely prior to his suicide. His last and final act of ending his own life appears to show at least his irrationality even from a layman's viewpoint. So, too, would his secretiveness in hiding his money, as was described above. Hiding it in a commode is certainly contrary to human experience and normal behavior, as was his suicide. If indeed he intended to abandon the money rather than hide it in the commode, this too would be evidence of his irrational behavior.

It is, therefore, doubtful that he was capable of forming an intent to abandon this money. Considering all of the evidence, I cannot escape the conclusion that there was no true abandonment and that his distributees are entitled to the money.

It is elementary that the age-old quasi-legal maxim "Finders, keepers. . ." is inapplicable where the true owner can be determined by a preponderance of evidence. It appears to me to have been so determined here to be the widow and children of the decedent, who would take through the Sheriff-Administrator, who is a party to this action.

Accordingly, it will be ordered that the Sheriff-Administrator be ordered to make distribution in accordance with the above holding.